## PHILADELPHIA AND READING RAILWAY COMPANY *v.* UNITED STATES OF AMERICA; INTERSTATE COMMERCE COMMISSION, AND ALLENTOWN PORTLAND CEMENT COMPANY.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 440. Argued October 18, 19, 1915.—Decided February 28, 1916.

Where, as in this case, no undue discrimination against the shipper or the locality of its plant is found, and the community declared to be prejudiced by the established conditions has not complained and is not a party to the proceeding, and the rate complained of is intrinsically reasonable, the mere fact that other carriers have adopted a lower schedule from the shipper's district to points other than the one designated, affords no foundation for a finding by the Interstate Commerce Commission that such rate is unreasonable and erroneous as matter of law.

As the order of the Commission in this case is not supported by the ascertained facts its enforcement should be enjoined.

219 Fed. Rep. 988, reversed.

THE facts, which involve the validity of an order of the Interstate Commerce Commission relating to railway rates, are stated in the opinion.

*Mr. Henry S. Drinker, Jr.,* for appellant.

*Mr. Charles W. Needham* for the Interstate Commerce Commission.

*Mr. William A. Glasgow, Jr.,* for respondent Allentown Cement Company.

*Mr. Assistant Attorney General Underwood* and *Mr. Blackburn Esterline,* Special Assistant to the Attorney General, for the United States submitted:

The practice complained of subjected Jersey City to undue and unreasonable prejudice and disadvantage. Section 3 of the Act to Regulate Commerce forbids discrimination of any kind whatsoever. *Houston & Tex. Ry.* v. *United States,* 234 U. S. 342, 356; *Southern Ry.* v. *United States,* 204 Fed. Rep. 465; *Int. Com. Comm.* v. *Louis. & Nash. R. R.,* 118 Fed. Rep. 613.

It is within the power of the Commission to protect the consuming point from discrimination as well as the locality where the traffic originates. *Tex. & Pac. Ry.* v. *Int. Com. Comm.,* 162 U. S. 184, 220.

What is undue or unreasonable preference or advantage is a question not of law but of fact. *Pennsylvania Co.* v. *United States,* 236 U. S. 351, 361; *Tex. & Pac. Ry.* v. *United States,* 162 U. S. 197, 219; *Int. Com. Comm.* v. *Alabama Midland Ry.,* 168 U. S. 144, 170.

The determination of this question of fact is for the Commission, and its findings are conclusive. *United States* v. *Louis. & Nash. R. R.,* 235 U. S. 314, 320.

This case having been submitted on bill and answer, the preferences and discrimination alleged in the answer of the Commission must be taken as true. *Int. Com. Comm.* v. *Ill. Cent. R. R.,* 215 U. S. 452, 475; *Int. Com. Comm.* v. *Chi. & Alton R. R.,* 215 U. S. 479; *Int. Com. Comm.* v. *Chi., R. I. & Pac. Ry.,* 218 U. S. 88.

Appellant having voluntarily, in its traffic agreements with the other carriers, established the same relative rates from all points in the Lehigh district to consuming points other than Jersey City, cannot, if conditions are the same, arbitrarily decline to make the same arrangement with respect to Jersey City. *Phila. & Reading Ry.* v. *United States,* 219 Fed. Rep. 988; *Darling* v. *Balt. & Ohio R. R.,* 15 I. C. C. 79, 87; *Spokane* v. *Nor. Pac. Ry.,* 21 I. C. C. 400, 424.

The Commission, after consideration of evidence, not set out in the record but adduced at the hearing before

it, found, it must be presumed, that conditions existing
at Jersey City were not so different from those existing
at other consuming points as to justify different treat-
ment.   There is nothing in the record to show the absence
of substantial evidence supporting these findings of fact,
so they are "conclusively correct in case of judicial re-
view."   *United States* v. *Louis. & Nash. R. R.,* 235 U. S.
314.

MR. JUSTICE McREYNOLDS delivered the opinion of
the court.

This appeal brings up a final decree of the United States
District Court, Eastern District of Pennsylvania, which
dismissed the railway's original bill presented to secure
annulment of an order by the Interstate Commerce Com-
mission commanding it and other carriers to desist from
subjecting Jersey City to undue prejudice and disadvan-
tage in respect of rates on Portland cement from the
"Lehigh District" in Pennsylvania.   219 Fed. Rep. 988.

Appellant maintains that when considered in connec-
tion with its report, the Commission's order is plainly
erroneous as matter of law because wholly unsupported
by the ascertained facts.   *Interstate Com. Comm.* v. *Louis.
& Nash. R. R.,* 227 U. S. 88, 91; *Florida East Coast Line* v.
*United States,* 234 U. S. 167, 185.

In November, 1912, the Allentown Portland Cement
Company filed a petition before the Interstate Commerce
Commission against the Philadelphia & Reading Railway
Company, Central Railroad Company of New Jersey,
Delaware, Lackawanna & Western Railroad Company,
Erie Railroad Company, and Pennsylvania Railroad
Company, wherein it alleged the Philadelphia & Reading
operates the only line reaching its plant at Evansville,
Pa., and in connection with other defendants transports
cement therefrom to many points, including Jersey City;

that the published rate of $1.35 per ton charged and col-
lected for transportation to the latter place is unlawful
and forbidden by §§ 1 and 3 of the Act to Regulate Com-
merce.   It prayed for "an order declaring the rates afore-
said to be unjust and unreasonable and that the same dis-
criminate against complainant and the locality wherein is
located its plant or factory aforesaid, and that the Commis-
sion will also enter an order fixing the reasonable and just
rates for the transportation of Portland Cement from its
factory or plant at Evansville, over the lines of the de-
fendants."   After hearing, a report and order were made
by the Commission; upon rehearing the original findings
were approved in an additional report and a supplemental
order, not substantially different from the first one, was
passed.   The material portions of these reports follow:

   "The case involves the question of the reasonableness
and justness of defendants' rate for the transportation
of cement in carloads from Evansville, Pa., to Jersey
City, N. J.   Evansville is reached only by the Philadel-
phia & Reading Railway.   That carrier transports the
cement in question from Evansville to Allentown, where
it delivers it to one of numerous connections which either
transports it to Jersey City or in turn delivers it to other
carriers for final delivery at Jersey City.   The rate via
these various routes is $1.35.   Certain of the carriers
which receive this Evansville cement from the Philadel-
phia & Reading at Allentown also serve other mills in
the same general vicinity as Allentown, namely, the
Lehigh district, either directly or through connections.
The rate from these other mills to Jersey City is 80 cents.
The Philadelphia & Reading does not participate in the
80-cent rate from any mill in the district."   31 I. C. C. 277.

   "Evansville is situated in the Lehigh district and is
one of numerous cement mills in that district located
within a radius of perhaps 20 miles of each other.   None
of the other mills, however, are reached by the Philadel-

phia & Reading, they being served by the Central Railroad of New Jersey or Lehigh Valley direct or by short lines of railway which connect with those carriers at distances of from 1 to 16 miles from their junction points. While the rate to Jersey City is thus $1.35 from Evansville on the Philadelphia & Reading the rate to Jersey City from these competing mills on other lines is 80 cents. . . . On shipments to Jersey City for trans-shipment by water to points in the southeast, such as Charleston and Savannah, the rate is 80 cents from Evansville, the same as it is from these other mills; and this equality of Evansville with the other mills is maintained on traffic to Philadelphia, Baltimore, New York City, and New England. In other words, the rate is the same from Evansville as from other mills in the Lehigh district to all points east, except on traffic to Jersey City for local consumption.

"The 80-cent rate to Jersey City locally from the other mills is used in connection with shipments destined to New York, that rate plus the trucking charge to all points south of Ninetieth street totaling less than the $1.40 rate to New York proper plus the trucking charge to the same point, the result being that complainant, who must use the latter rate, is effectively barred from competition in that part of the city located south of Forty-third street, which is the greatest cement consuming district. North of Ninetieth street complainant can compete with the other mills because of their greater expense in the longer truck haul from Jersey City. It will also necessarily be apparent that complainant can not sell any cement in Jersey City for local consumption in competition with these other mills which have the 80-cent rate."

"It can not be questioned that complainant is laboring under a prohibitory disadvantage in marketing its product in Jersey City under the present rate in competition with other mills in the same district. While it is true that the Philadelphia & Reading does not have any hand in the

establishment of the 80-cent rate from these other mills, as it can not participate in that traffic because it does not serve them, it is also true that it is a party to tariffs under which cement may be purchased as cheaply at Evansville as at neighboring mills in the Lehigh district by dealers in and consumers of cement at practically all points of importance east of that district, with the single exception of Jersey City.  Why Jersey City should be singled out by that carrier as the one exception to this equalization of rates as between competing mills in the same district has not been satisfactorily shown by this record.  We are therefore of opinion, and find, that in maintaining or participating in rates on cement in carloads to other eastern destinations, such as Baltimore, Philadelphia, New York, and New England points, which are not higher from Evansville than the contemporaneous rates which it maintains or participates in from other mills in the Lehigh district, while refusing contemporaneously to participate in the same relative adjustment from Evansville to Jersey City, the Philadelphia & Reading, as well as the other carriers defendant, are subjecting Jersey City and its traffic to an undue prejudice and disadvantage, from which an order will be entered to cease and desist." 27 I. C. C. 448.

. Purporting to base its action on the foregoing findings, the Commission directed:

"That the above-named defendants, according as their various lines or routes may run, be, and they are hereby, notified and required, on or before October 1, 1914, to cease and desist from said undue and unreasonable prejudices and disadvantages."

. "That said defendants, according as their various lines or routes may run, be, and they are hereby notified and required to establish on or before October 1, 1914, upon statutory notice to the Interstate Commerce Commission and to the general public by filing and posting in the man-

ner prescribed in section 6 of the act to regulate commerce, and for a period of two years after said October 1, 1914, to maintain and apply to said transportation rates which will prevent and avoid the aforesaid undue and unreasonable prejudices and disadvantages."

Undue discrimination against itself or the locality of its plant, as alleged by the cement company, was not found; the community declared to be prejudiced by established conditions had offered no complaint and was not party to the proceedings. Neither the $1.35 rate to Jersey City nor any other participated in by the Philadelphia & Reading was declared unreasonable, either in itself or in relation to others; and there was no positive finding touching the reasonableness—intrinsic or relative—of the 80-cent schedule from "Lehigh District" adopted by the remaining carriers.

In their brief here, counsel for the Commission say:

"The Commission did not pass upon the reasonableness of either rate [to Jersey City—80 cents or $1.35]. It struck at the discrimination and the cause of it. It said, in effect, to these five carriers that as they treated the Lehigh cement district as one point of origin and made a *relative adjustment of rates* on cement to all the principal consuming points competing with Jersey City, they must make the same adjustment of the rates to Jersey City on this commodity; that they might make the rate any sum which they might choose to initiate, but that it must be the same as the rate from every mill in the district to Jersey City. . . ."

"If, as to all other consuming localities, they [the carriers] are giving the relative adjustment of rates on cement from cement mills in the Lehigh district, and refusing this adjustment to one consuming locality, they are prejudicing that locality. . . ."

"The establishment of joint rates is provided for in section 6 of the act to regulate commerce. Such rates

are made by agreement between the participating carriers and cannot be filed or published without such agreement. . . ."

"The appellant has no individual rate which covers the cement traffic from Evansville to Jersey City; the traffic moves on a joint rate. The cement traffic from other mills to Jersey City and to other principal consuming points also moves on joint rates. The Philadelphia & Reading is a party to many of these rates. It is also a party to the joint rate from Evansville to Jersey City. As a participating carrier in these rates it is responsible for the violation of the act described in the order."

We must assume the Jersey City rate of $1.35 is intrinsically reasonable and non-discriminatory in relation to those accorded other consuming points; and, plainly, if this were put in by all carriers, the Commission's order would be complied with and the supposed discrimination disappear. It must be taken as true that no rate above what all might lawfully establish is being demanded by any carrier; and, with one exception, they are paid forty per cent. less than that amount. If a universal rate of $1.35 could not justly be complained of by the locality, certainly *it* is not discriminated against or unlawfully prejudiced because, failing to agree, most of the carriers have established an 80-cent schedule. In the circumstances disclosed it is impossible rightly to conclude that Jersey City is being subjected to "any undue or unreasonable prejudice or disadvantage."

As the facts reported afford no foundation for the Commission's findings, enforcement of the order based thereon must be enjoined. The decree below is accordingly reversed and the cause remanded for further proceedings consistent with this opinion.

*Reversed.*