See, also, 55 S. Ct. 113, 79 L. Ed. ——.

**CHICAGO, M., ST. P. & P. R. CO. v.
UNITED STATES.**

No. 13726.

District Court, N. D. Illinois, E. D.
June 13, 1934.

O. W. Dynes, M. L. Bluhm, and C. L. Taylor, all of Chicago, Ill., for plaintiff.

Dwight Green, U. S. Dist. Atty., Gallagher, Rinaker, Wilkinson & Hall, Winston, Strawn and Shaw, J. T. Quisenberry, E. A. Smith, and Walter McFarland, all of Chicago, Ill., Daniel W. Knowlton and J. Stanley Payne, both of Washington, D. C., and W. E. Beebe and Essington & McKibbin, all of Chicago, Ill.

Before EVANS, Circuit Judge, and BARNES and HOLLY, District Judges.

PER CURIAM.

On the 14th day of February, A. D. 1934, Chicago, Milwaukee, St. Paul & Pacific Railroad Company filed its bill of complaint herein praying that a preliminary or interlocutory order or injunction be entered restraining and suspending the enforcement, operation, and execution of an order of the Interstate Commerce Commission by Division 2, dated the 8th day of November, A. D. 1933, Investigation and Suspension Docket No. 3843 canceling certain proposed tariffs on bituminous coal filed with the Commission by the plaintiff and that defendant, United States of America, its officers and agents, be enjoined and restrained from enforcing said order until the final determination of this case and that upon final hearing herein a decree be entered perpetually enjoining, suspending, annulling, and setting aside the enforcement, operation, and execution of said order.

Following the filing of the bill of complaint, the Commission postponed the effective date of said order until April 23, 1934. On March 7, 1934, the Commission reopened said proceedings for oral argument and consideration and on the 8th day of April, the Commission made and filed its report with its findings of fact and conclusions thereon and ordered that the order theretofore entered on the 8th of November, 1933, be affirmed. These subsequent proceedings by the Commission were brought to the attention of the court by a supplement to the original bill herein. Answers have been filed by the original defendant and interveners, briefs and argument submitted, and the cause submitted to the court for final determination.

On the 22d day of November, 1933, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, plaintiff, filed tariffs with the Interstate Commerce Commission to become effective on the 23d day of December, 1932, which fixed rates of $1.70 per ton on bituminous coal from mines on its railroad in Clinton District, located in Vermillion and Vigo counties in the state of Indiana to various destinations located on its railroad in Northern Illinois, including Rockford and Freeport, and also fixed rates of $1.75 per ton on bituminous coal from mines on its railroad in the Linton district, located in Vigo, Sullivan, Greene, and Clay counties in the state of Indiana, to each of said destinations in Northern Illinois, said rates of $1.70 and $1.75 per ton, respectively, constituting reductions of 10 cents per ton under the rates theretofore in effect from said Clinton and Linton districts in Indiana to eight of the said destinations, reductions of 4 cents per ton to five of the destinations, and 17 cents per ton to the remaining destinations, including Rockford and Freeport; that prior to the effective date of said tariffs certain associations representing coal producing interests in Illinois and certain railroads serving coal mines in Illinois and the Illinois Commerce Commission. filed protests with the Commission against the said tariffs and asked the Commission to institute a proceeding inquiring into the lawfulness of the proposed rates and tariffs; that on the 22d day of December, 1932, the Commission entered its order suspending the operation of said proposed tariffs until the 23d day of July, 1933, and has since entered an order canceling such tariffs.

It appears from the evidence taken before the Commission that for many years prior to the 20th day of August, 1930, plaintiff was engaged in the transportation of bituminous coal from the mines in said mining districts in Indiana to destinations in Illinois, including Rockford and Freeport, and that the rates applicable for movement of said coal from said Clinton district in Indiana to Rockford, Ill., from the 1st day of April, 1913, to the 20th day of August, 1930, were the same as rates from the so-called Springfield group in Illinois to Rockford, Ill. It also appears that in a certain proceeding pending before the Illinois Commerce Commission said commission by an order which became effective on the 20th day of August, 1930, reduced the rates on bituminous coal moving intrastate from the origin mines in Illinois to Rockford and Freeport, 17 cents per ton.

Subsequently in a proceeding before the Interstate Commission under section 13 of the Interstate Commerce Act (49 USCA § 13) in which it was urged that the rates required by the Illinois Commerce Commission to be assessed as maxima for the transportation of coal from mines in that said district to Rockford and Freeport, Ill., were unlawful and caused undue and unreasonable advantage, preference, and prejudice as between persons or localities in intrastate commerce on the one hand, and interstate commerce on the other hand, and as unjustly and unreasonably discriminating against interstate commerce, a hearing was had before the Interstate Commerce Commission and said Commission (Intrastate Rates on Bituminous Coal Between Points in Illinois, 182 I. C. C. 537) refused to require the said Illinois intrastate rates to be increased. It found in that case that the rates fixed by the Illinois Commerce Commission for the hauling of bituminous coal to Rockford and Freeport should not be found unlawful under section 13 of the act until and unless the interstate rates from the Indiana groups (including the Brazil-Clinton and Linton-Sullivan groups) to the same destinations were increased to a level more nearly commensurate with the general level of the rates on coal in this territory. Page 564 of 182 I. C. C.

In the hearing under consideration in this case on the proposed rates of the Milwaukee, while it was admitted that its present rates are below a reasonable maximum, there was no evidence presented that such rates were below a reasonable minimum nor that they were noncompensatory. The Commission based its final order solely upon findings that "the proposed rates, if permitted, to become effective would lead to a disruption of the rate structure on coal in Indiana and related areas thus impairing the revenue of the carriers serving these areas and their ability to provide the adequate and efficient transportation contemplated by Section 15 (a) of the Act; that they would cause a disruption of the individual groups from which the rates are proposed; and they would cause a disruption of the long standing rate relations existing for competitive purposes between the several Indiana groups," and that the proposed rates would be unreasonable and in violation of section 1 (5) and 15 a (2) of the act (49 USCA §§ 1 (5), 15a (2).

There seems to be no question but that the Milwaukee is in a position to serve the mines in the Brazil-Clinton and Linton-Sullivan groups which are on its lines at a much cheaper rate than other carriers whose lines touch coal mines in the same vicinity and more cheaply than the lines in Illinois can carry coal from the Northern Illinois and Springfield groups to Rockford and Freeport. The protestants in the hearing before the Commission made no attempt to show that the proposed rates of the Milwaukee were unreasonably low for the service given. The sole contention of the protestants was that the lower rates proposed by the Milwaukee would disrupt the general rate structure on coal from the various mining groups in Indiana, Kentucky, and Southern Illinois. To support this contention, they produced as a witness one R. R. DeCamp, general commerce agent of the Illinois Central Railroad, who testified that he firmly believed that, if the proposed reduction in rates by the Milwaukee were confirmed and approved by the Commission, before the ink would be dry upon the order vacating the suspension of the proposed rates of the Milwaukee new tariffs of competing lines in the same district would be issued making the same reduction, and, if that should happen, all of Indiana rates would go down 17 cents; further that he had every reason to believe that, if a uniform reduction of 17 cents prevailed from the Indiana groups which compete so keenly with the Illinois groups it would be only a matter of time before the entire rate structure would be disrupted and unnecessarily reduced.

We do not feel that a mere belief of a witness as to what may happen in the future, even if he be an expert, is entitled to much weight as evidence. The belief in this case does not appear to have been founded upon facts or scientific observation as is required of an expert in any other line before his opinion becomes competent. The finding of the Commission, however, appears to be based solely upon such expressions as to the future effect of the proposed rates of the Milwaukee.

■■ The Commission finds, as stated above, that the proposed rates of the Milwaukee are in violation of sections 1 (5) and 15a (2) of the Interstate Commerce Act. Section 1 (5) provides simply that "all charges made for any service rendered or to be rendered in the transportation of passengers or property * * * shall be just and reasonable." There is no evidence that the proposed rates in and of themselves are unreasonable. The carrier has a right to initiate rates. United States v. Illinois Central Railroad Co., 263 U. S. 515, 44 S. Ct. 189, 68 L. Ed. 417. There is no presumption that a rate so initiated is unreasonably low. On the contrary, the bur-

den is upon the party complaining to establish that fact, and, in the absence of evidence, the initiate rate must stand. Anchor Coal Co. v. United States (D. C.) 25 F.(2d) 462.

 A reduction by the Milwaukee of the coal rates will, other things being equal, benefit both the consumers of coal at the points of destination and the producers of coal at the points of origin, and, as said by the court in Texas & Pac. Ry. Co. v. United States, 289 U. S. 627, 638, 53 S. Ct. 768, 772, 77 L. Ed. 1410, "The act was passed for the protection of those who pay or bear the rates."

Further the Milwaukee has the right within the zone of reasonableness to adopt such rates as will enable it to obtain or retain desired traffic for its own lines. Texas & Pac. Ry. Co. v. United States, supra. It has a through line from coal mines in the Brazil-Clinton and Linton-Sullivan groups to Rockford, Freeport, and certain intermediate destinations. It has adopted a rate which will enable those mines to undersell coal in the destinations mentioned, coming from mines not so favorably situated, with the result that the Milwaukee will derive a greater revenue and the buyers of coal at those destinations will obtain that commodity at a lower price. In the absence of evidence that the proposed rate is not compensatory or below a reasonable minimum, there is nothing in section 1 (5) of the act which justifies the Commission in setting it aside.

 There still remains the question whether the order of the Commission is authorized by section 15a (2). It is on this section the Commission and the defendants herein seem principally to rely. The reason, and the only reason, given for canceling the proposed rates is that a rate war would likely result and the present rate structure would be disrupted. As a matter of fact the rate structure was disrupted when in 1930 the Commerce Commission permitted reductions from the mines in Springfield and Southern Illinois to Freeport, Rockford, and intermediate destinations.

There is no evidence in the record that the present rate structure is fair or that it is reasonable; no evidence that its disruption would necessarily lead to the introduction of unfair or unreasonable rates. Further, that situation is within the control of the Commission. It is not necessary that it sanction other changes of rates, if such new rates are below a reasonable minimum, or are noncompensatory.

Section 15a (2) of the act as amended in 1933, 49 USCA § 15a (2), provides that the Commission, in the exercise of its power to prescribe just and reasonable rates, shall give due consideration, among other factors, to the effect of rates on the movement of traffic, to the need, in the public interest, of adequate and efficient railway transportation service at the lowest cost consistent with furnishing such service, and to the need of revenues sufficient to enable the carriers, under honest, economical, and efficient management, to provide such service. There is no evidence that the proposed rates of the Milwaukee will interfere with adequate and efficient railway service. Some mention was made in the evidence of the fact that some mines in the Brazil-Clinton and Sullivan-Linton districts, a very small proportion of all the mines in the two districts, are not located so they can be served by the Milwaukee, but have to depend on other lines of railroad which would have to carry the coal by a much longer route and through other connecting carriers to deliver it to Rockford, Freeport, and other destinations involved in this proceeding. But we do not understand the act to mean that the Commission should compel a carrier to charge a rate higher than a reasonable minimum and compel shippers favorably located to pay such higher rates in order to favor other mines less favorably located or to increase the revenue of other carriers having a less direct route to the destinations involved.

Defendants have called our attention to Jefferson Island Salt Mining Co. v. United States (D. C.) 6 F.(2d) 315, as supporting their contentions, stating that is the only direct decision on the question of the power of the Commission to prescribe minimum rates, even in the absence of evidence that the existing rate which that minimum required to be increased was noncompensatory or in itself unreasonably low from the carrier's view point. But that case was decided under section 15a (2) as it stood after the amendment of 1920 (49 USCA § 15a (2), and it was very considerably changed by the amendment of 1933 (49 USCA § 15a (2). As it stood in 1920, the Commission was authorized to initiate, modify, establish, or adjust rates so that carriers *as a whole* (or as a whole in each of such rate groups as the Commission might from time to time designate) would under honest, efficient, and economical management earn an annual net operating income equal as near as might be to a fair return upon the aggregate value of the railway property of such carriers held for and used in the service of

transportation. There is nothing in the section as it now stands authorizing the Commission to establish rates above a reasonable minimum for one railroad merely to enable another railroad in the group not so well situated, to earn a fair return, even if the act of 1920 did so provide. Nor is there any evidence in the record that the proposed rates of the Milwaukee if allowed to stand will so affect the earning capacity of any other railroad.

· It is our opinion that the order of the Commission should be set aside and annulled.