## EASTERN MOTOR CARRIERS' ASS'N v. UNITED STATES et al.

District Court, S. D. New York.

Jan. 5, 1943.

Charles E. Cotterill, of New York City, for plaintiff and supporting intervenors.

Thurman Arnold, Asst. Atty. Gen., and Robert L. Pierce, Sp. Asst. to Atty. Gen., for United States.

Nelson Thomas, of Washington, D. C. (Daniel W. Knowlton, Chief Counsel, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Before AUGUSTUS N. HAND, Circuit Judge, and CLANCY and CONGER, District Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action to set aside and enjoin enforcement of an order of the Interstate Commerce Commission which held certain proposed motor carrier tariffs unlawful upon a finding that the rates were unjustly discriminatory to certain shippers. The commodity to which the rates were to be applied was hard surfaced floor covering. The railroads have a rate of 70 per cent of first-class for shipments of less than 30,000 pounds and 45 per cent of first-class for 30,000 pounds or more. The motor carriers proposed a rate of 45 per cent of first-class on shipments weighing 30,000 pounds or more; a slightly higher rate (47½ per cent of first-class) for shipments weighing between twenty and thirty thousand pounds; and a rate of 70 per cent of first-class on shipments of less than 20,000 pounds.

The Commission referred with evident approval to the prior finding of Division 3 of the Commission which read as follows: "The Commission has found repeatedly that carload minimum weights should be established by rail carriers with reference to the loading capacity of their freight cars and has condemned minimum weights in excess of the loading possibilities of the rail equipment. The respondents herein have not presented to us a valid reason from the point of view of economy in transportation or otherwise, such as we have found to exist in connection with certain trainload movements, why they should be permitted to establish a minimum weight greater than is physically possible to load in the motor equipment usually used by them, and, in our opinion, no such reason exists. Strictly speaking, the proposed minimum weight of 30,000 pounds is not a truckload minimum weight but rather is a volume minimum weight, which necessitates the use of more than one unit of equipment to load and transport that quantity of linoleum. We adopt as a policy the condemnation as unreasonable of a volume minimum weight, unless it is shown clearly that, as a result thereof, motor carriers can handle the traffic at the volume minimum weight at costs per 100 pounds which are less than

the costs incurred at a reasonable truckload minimum weight. The record indicates that a reasonable truckload minimum on linoleum is 20,000 pounds. There is no showing herein that operating economies would result were the proposed rates restricted to apply only when 30,000 pounds are tendered for shipment."

The Commission went on to affirm prior findings of Division 3 that proposed rates of 45 and 47.5 per cent of first-class are not unjust or discriminatory except to the extent that the proposed rates, 45 per cent of first-class, are subject to a minimum of 30,000 pounds.

It made further findings as follows:

"We further find that the proposed rates, minimum 30,000 pounds, would give an unjust advantage to shippers of 30,000-pound lots and be unjustly discriminatory to shippers of 20,000-pound lots.

"As previously indicated, a check of the tariffs discloses that respondents' present rates are either 45 percent of first class, minimum 20,000 pounds, or 47.5 percent of first class, minimum 20,000 pounds. As respondent's present bases of rates do not appear to be unjust, unreasonable, or unjustly discriminatory, no order for the future is necessary."

■ The difficulty with adoption of a rate of 45 per cent on a minimum of 30,000 pounds, when that rate is not allowed to smaller shippers, seems to be that it has no relation to the business of the motor carriers, for they have made no showing of any saving when carrying more than 20,000 pounds. Nor have they showed that a 45 or 47½ per cent rate, or some intermediate rate, for anything beyond 20,000 pounds would not enable them to maintain reasonable competition with the railroads.

The finding that rates of either 45 or 47½ per cent of first-class, minimum 20,000 pounds, would not in themselves be unreasonable does not negative the finding of an unjust advantage to shippers of 30,000 pound lots in cases where shippers of 20,000 pound lots are not given the same treatment. If motor carriers can make money either at 45 or 47½ per cent of first-class, it would seem that the Commission might reasonably require that the advantage given to the larger shippers of over 30,000 pounds should be shared with the smaller shippers of less than 30,000 pounds, since there is no showing that such sharing would work to the unreasonable disadvantage of the carriers, and it clearly would give the smaller shippers the benefit of the lower rate which the larger shippers would enjoy.

■ As we have already suggested, the proposal of a 45 per cent rate for shipments in excess of 30,000 pounds has no apparent relation to the business needs or the convenience of transportation of the motor carriers. It is a mere adoption on a volume basis of rates for railroad carload lots which have been sanctioned in the case of rail carriers. It is evident that the motor carriers are attempting to compete with the railroads on rates for large shipments and at the same time to make additional profits on smaller shipments by the 47½ per cent rate. Competition between rail and motor carriers may be entirely legitimate, and indeed desirable, provided a greater equality in rates can be preserved between the smaller and the larger shippers. The extent to which competition should be recognized in arriving at just rates is, within reasonable limits, a matter for the expert judgment of the Commission. It does not in itself necessarily determine whether a rate is preferential under Section 3 of the Interstate Commerce Act or unreasonable under Section 1(5), 49 U.S.C.A. §§ 3, 1(5). It is a matter to be given weight by the Commission, rather than an absolute defense. Interstate Commerce Comm. v. Alabama Midland Ry., 168 U.S. 144, 166, 18 S.Ct. 45, 42 L.Ed. 414; United States v. Illinois Central R. Co., 263 U.S. 515, 44 S.Ct. 189, 68 L.Ed. 417.

■ The effect of requiring the motor carriers to fix a single low minimum quantity adapted to their equipment is to oblige them, if they are to meet railroad competition, to extend to smaller shippers the advantages of the competitive rate. No reason is advanced why this should not be done in this case. The 45 per cent rate is found to be reasonable and compensatory; there is nothing to show that hardship would result to the carriers from extending a 45 per cent rate, or one between 45 per cent and 47½ per cent, to small shippers as well as to large ones. It appears to us that in deciding this case the Commission has met the requirements of Section 216(i) of the Motor Carrier Act, 49 U.S.C.A. § 316(i), in that it has given "due consideration * * * to the inherent advantages of transportation by such carriers, [and] * * * to the need, in

the public interest, of adequate and efficient transportation service by such carriers at the lowest cost consistent with the furnishing of such service * * *". Its disposition of the proceeding before it was right and should be affirmed.

Submit proposed findings upon ten days' notice.

Judgment for the defendants, dismissing the complaint.