UNITED STATES, INTERSTATE COMMERCE COMMISSION, AND SWIFT LUMBER COMPANY *v.* ILLINOIS CENTRAL RAILROAD COMPANY ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

WYOMING RAILWAY COMPANY *v.* UNITED STATES AND INTERSTATE COMMERCE COMMISSION.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF WYOMING.

Nos. 40 and 38. Argued November 12, 13, 1923.—Decided January 7, 1924.

1. When a joint through rate, maintained by a trunk line and an independent connection, though not unreasonable in itself, works

undue prejudice to a shipper on the connection, in view of lower through rates ·for the same commodity from competing points· in the same territory over the trunk line and its branches and' other independent connections, both the. trunk line and the ·other participant in the high rate participate in the unjust discrimination and may be required, by an order of the Interstate Commerce Commission, to remove the discrimination.  P. 520.

2. A discrimination in rates is not illegal under § 3 of the Interstate Commerce Act unless it is unjust.  P. 521.

3. The fact. that preferential rates on traffic originating from some of its connections are given by a carrier in order to retain and increase its business, may relieve it from any charge of favoritism or malice, but⸱it will not justify a resulting unjust discrimination. P. 523.

4. A difference in rates is not illegal unless shown not to be justified by the cost and value of the respective services rendered and by other ·transportation conditions.  P. 524.

5. The fact that a rate is inherently reasonable and that a lower rate from competing points is not shown to be unreasonably low, does not establish that the discrimination is just.  *Id.*

6. A blanket rate from points on a trunk line was made applicable from points on some only ·of its connections through shrinkage or absorptions allowed the connecting carriers by the trunk line, with resulting prejudice to a shipper on another connection in the same territory to which the privilege was not extended.  *Held,* that the fact that the preferential rate was for the purpose of developing traffic on the main carrier's lines, or of securing competitive traffic, did not establish the innocence of the discrimination as a matter of law, but was one only of several proven factors to be weighed by the Interstate Commerce Commission, and that the Commission's finding of unjust· discrimination, based on a consideration of them all, was cor. lusive.  *Id.*

7. Such a decision of the Commission is not an attempted substitution of the Commission's policy of rate-making for that of the carrier. P. 525.

8. An order of the Commission that a trunk line and short line, participating in a´ joint rate, desist from resulting discrimination, but which may be satisfied by raising other, competing rates of the trunk line, or by reducing its division of the joint rate complained of, is not subject to the objection that it will have a confiscatory effect upon the short line.  P. 526.

9. An agreement of a shipper to ship all his products over a railroad is not a continuing assent to the rates in effect when it was made. P. 527.

10. The power of the Commission to remove unjust discrimination applies to a through rate consisting of a combination of locals as well as to a joint through rate. *Id.*

No. 40, decree reversed.

No. 38, decree affirmed.

APPEALS from decrees of the District Court in suits to enjoin enforcement of orders of the Interstate Commerce Commission. In the first case, there was a perpetual injunction; in the second, the bill was dismissed.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, for the United States.

*Mr. Robert V. Fletcher,* with whom *Mr. Walter S. Horton* was on the brief, for Illinois Central Railroad Company, appellee in No. 40.

*Mr. Garner Wynn Green,* with whom *Mr. Marcellus Green* was on the brief, for Fernwood, Columbia & Gulf Railroad Company, appellee in No. 40.

*Mr. H. C. Lutkin,* with whom *Mr. W. T. Alden, Mr. C. R. Latham, Mr. H. P. Young* and *Mr. Chas. Martin* were on the brief, for appellant in No. 38.

*Mr. J. Carter Fort,* with whom *Mr. P. J. Farrell* was on the brief, for the Interstate Commerce Commission.

*Mr. George J. Gulotta* and *Mr. L. Palmer* filed a brief on behalf of Swift Lumber Company, appellant in No. 40.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

These cases, brought to set aside orders of the Interstate Commerce Commission, were argued together, and present, in the main, the same questions of law. In

each, carriers who were found to have unjustly discriminated against shippers of lumber located on an independent short line, were ordered by the Commission to cease and desist from charging them higher through rates than were contemporaneously charged for like services from other points within what is called blanket territory.[1] Each case was heard before three judges on plaintiff's motion for a preliminary injunction, on defendant's motion to dismiss the bill for want of equity, and on final hearing. In each the whole record before the Commission was introduced. In No. 40 the federal court for southern Mississippi perpetually enjoined the enforcement of the order issued by the Commission in *Swift Lumber Co.* v. *Fernwood & Gulf R. R. Co.*, 61 I. C. C. 485. In No. 38 the federal court for Wyoming dismissed the bill; thus sustaining the order issued by the Commission in *Pioneer Lumber Co.* v. *Director General*, 64 I. C. C. 485. Each case is here on direct appeal under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220.

The facts in No. 40 present most of the questions of law requiring discussion. The so-called blanket territory, which extends south from Jackson, Mississippi, to the Gulf of Mexico (about 200 miles), and from the Mississippi River into Alabama, produces yellow pine lumber in quantity. Through this territory, the Illinois Central Railroad extends from New Orleans to Jackson and thence to the Ohio River crossings and leading lumber markets of the North. Partly by its main line, partly, also, by branches, and partly by connections with independent lines, it serves a large percentage of the lumber mills in the territory. From all these points on the

---

[1] Compare *St. Louis Southwestern Ry. Co.* v. *United States*, 245 U. S. 136, 138, note 1. The carriers insist that the rates are not properly called blanket rates, since they do not apply to all points within the territory; and that they should be termed group rates.

Illinois Central main line, from all on its branches, from all on three independent short lines which connect indirectly with it, and from all on the Mississippi Central (a longer independent line which crosses it running East and West) the carriers have established the same through lumber rates to the northern markets, regardless of the varying distances within the blanket territory. At Fernwood, Mississippi, a little south of its Monticello branch, the Illinois Central connects with the Fernwood & Gulf, an independent short line, on which the Swift Lumber Company has a mill at Knoxo. The distance from Knoxo to the junction is 27 miles. The joint through rate from Knoxo *via* Fernwood to northern points, voluntarily established by these carriers, is 2 cents per 100 pounds higher than the rate from Fernwood or any other point within the so-called blanket territory on the Illinois Central main or branch lines or on the connections mentioned above. The distance to the northern markets from many of the points on these lines is much greater than the distance from Knoxo, which lies near·the centre of the so-called blanket territory.

The Swift Lumber Company instituted proceedings before the Commission against the Illinois Central, the Fernwood & Gulf, and connecting carriers in which it attacked the higher rates from Knoxo both as unreasonable, under § 1 of the Act to Regulate Commerce, and as unjustly discriminatory, under § 3. The Commission found that the rates from Knoxo were not unreasonable; but that they subject the Lumber Company to undue prejudice, in view of the lower rates so given competing points within the so-called blanket territory. The order directed the carriers ". according as they participate in the transportation . . . to cease and desist " from the discrimination found. All the carriers except the Illinois Central and the Fernwood & Gulf acquiesced in the order.

These two joined as plaintiffs in this suit, and urge on several grounds that the order is void.

*First.* It is contended that the order exceeds the powers of the Commission. The argument is that a carrier cannot be held to have participated in an unjust discrimination unless it is a party both to the rate by which a preference has been given to others and to the higher rate which is given to the complainant; that the Fernwood & Gulf did not participate in the discrimination complained of, since it did not join in the lower rates from other points by which the Swift Lumber Company claims to be prejudiced; and hence, that it cannot be required to coöperate with the Illinois Central in reducing rates from Knoxo which have been found to be inherently reasonable. That, on the other hand, the Illinois Central cannot be held to have subjected the Swift Lumber Company to undue prejudice, since Knoxo is not on its own lines and it is not in a position to remove, by its own act, the discrimination complained of. Neither proposition is sound. Proceedings to remove unjust discrimination are aimed directly only at the relation of rates. By joining with the Illinois Central in establishing the prejudicial through rate from Knoxo, the Fernwood & Gulf became as much a party to the discrimination practiced, as if it had joined also in the lower rates to other points which are alleged to be unduly preferential. Compare *St. Louis Southwestern Ry. Co.* v. *United States,* 245 U. S. 136, 144. If such were not the law, relief on the ground of discrimination could never be had against preferential rates given by a great railway system to points on its own lines which result in undue prejudice to shippers on short lines connecting with it.[2] Moreover, it is not true that the Illinois Central can-

_____

[2] The cases relied upon by the carriers are not inconsistent with this conclusion. In *Central R. R. Co. of New Jersey* v. *United States,* 257 U. S. 247, the creosoting privilege was not a part of the joint tariff. It was an item in the local tariff granted without the con-

not remove the discrimination without the coöperation of the Fernwood & Gulf.   The order leaves the carriers free to remove the discrimination either by making the Knoxo rate as low as that from Fernwood, or by raising the rate from Fernwood, or by giving both an intermediate rate. *American Express Co.* v. *Caldwell*, 244 U. S. 617, 624.   The Illinois Central, acting alone, is in a position to raise the rate from Fernwood.   For its main line extends from there to the Ohio River crossings, the rate-breaking point.[3]

*Second.* It is contended that the order of the Commission is unsustained by proof.   That there is discrimination against Knoxo is not denied.   The rates charged from that station are higher than those charged from competing points within the so-called blanket territory for transportation of the same commodity, to the same market, for the same or longer distances, mainly over the same route; some of these competing points being located on the Illinois Central main line, some on its branch lines, and some on independent lines.   But mere discrimination does not render a rate illegal under § 3.   Only such rates as involve unjust discrimination are obnoxious to that section. *Manufacturers Ry. Co.* v. *United States*, 246 U. S. 457, 481.   There is no claim that any one of the evidential facts found by the Commission and relied upon to show

currence of the carriers before the Commission; and the revenues derived therefrom were not shared by them.   In *Philadelphia & Reading Ry. Co.* v. *United States*, 240 U. S. 334, 340, it was pointed out by the Court that: "Undue discrimination against itself or the locality of its plant, as alleged by the cement company [the petitioner before the Commission] was not found; the community declared to be prejudiced by established conditions [Jersey City] had offered no complaint and was not party to the proceedings."   In *Penn Refining Co.* v. *Western New York & Pennsylvania R. R. Co.*, 208 U. S. 208, 221-222, it was sought to hold one of the connecting carriers liable for what the Court deemed to be the act of another.

[3] See *St. Louis Southwestern Ry. Co.* v. *United States*, 245 U. S. 136, 139, note 2.

that the discrimination was unjust, is without adequate supporting evidence. The argument is that these facts, even when supplemented by others appearing in the evidence, do not warrant the finding of the ultimate fact, that the higher rates from Knoxo are unduly prejudicial to the Swift Lumber Company to the extent that they exceed the blanket basis of rates from Fernwood (the junction with the Illinois Central) and other points.

A carrier is entitled to initiate rates and, in this connection, to adopt such policy of rate-making as to it seems wise. *Interstate Commerce Commission v. Chicago Great Western Ry. Co.*, 209 U. S. 108, 118-119; *Southern Pacific Co. v. Interstate Commerce Commission,* 219 U. S. 433; *Interstate Commerce Commission v. Louisville & Nashville R. R. Co.*, 227 U. S. 88, 92. In the exercise of this right, the Illinois Central adopted the policy of establishing blanket, or group, rates on its main and branch lines, by which the remoter lumber producing points were granted, regardless of distances within the territory, the same rates to northern markets as points located nearer. In the exercise of the same right to initiate rates, the Illinois Central adopted, also, the policy of granting to connecting independent short lines, and to longer connecting carriers, an allowance (called shrinkage or absorption) by reason of which the Illinois Central's division of the through rate on traffic originating on connections is reduced, by the amount of the allowance, to less than its rate for freight originating on its own line at the junction point.[4] The Illinois Central insists that its general policy is not to grant to points on connecting lines the blanket, or junction-point rate; and that it departs from this policy only when it is compelled by competition to do so. Where the through rate is the

---

[4] See *The Tap Line Cases,* 234 U. S. 1; *Louisiana & Pine Bluff Ry. Co. v. United States,* 257 U. S. 114.

same from points on the connecting line as it is from the junction, the share or division of the connecting carrier consists wholly of this absorption. Where the through rate from points on the connection is higher than the junction-point rate, the connecting line receives as its share an additional amount consisting of the difference between these rates. This additional amount is called the arbitrary or differential. Thus, the Fernwood & Gulf receives a division of 4 cents per 100 pounds, consisting of a 2-cent absorption and a 2-cent arbitrary.[5]

The Illinois Central argues that the discrimination in charging a higher rate from Knoxo cannot be deemed unjust since the preferential rate to other points was granted solely for the purpose of increasing its own business, and that the lower rate from Knoxo was denied solely in order to preserve its own revenues. In other words, it granted the blanket rate to all points on its own lines in order to develop business originating thereon. It declined to grant the blanket rate (and to increase the absorption) where the connecting line was wholly dependent upon it; and traffic originating thereon could be secured in spite of the higher rate. It granted the blanket rate to points on connecting lines (and increased their absorptions) where this was deemed necessary in order to secure traffic which might otherwise go to competitors.

The effort of a carrier to obtain more business, and to retain that which it had secured, proceeds from the motive of self-interest which is recognized as legitimate; and the fact that preferential rates were given only for this purpose relieves the carrier from any charge of

---

[5]As a division of only 2 cents is ordinarily deemed inadequate compensation by a connecting line, and as the trunk line is naturally indisposed to submit to a larger shrinkage of its own division, the through rate is commonly increased by an arbitrary, if the traffic will bear it.

favoritism or malice. But preferences may inflict undue prejudice though the carrier's motives in granting them are honest. *Interstate Commerce Commission* v. *Chicago Great Western Ry. Co.,* 209 U. S. 108, 122. Self-interest of the carrier may not override the requirement of equality in rates. It is true that the law does not attempt to equalize opportunities among localities, *Interstate Commerce Commission* v. *Diffenbaugh,* 222 U. S. 42, 46; and that the advantage which comes to a shipper merely as a result of the position of his plant does not constitute an illegal preference. *Ellis* v. *Interstate Commerce Commission,* 237 U. S. 434, 445. To bring a difference in rates within the prohibition of § 3, it must be shown that the discrimination practiced is unjust when measured by the transportation standard. In other words, the difference in rates cannot be held illegal, unless it is shown that it is not justified by the cost of the respective services, by their values, or by other transportation conditions. But the mere fact that the Knoxo rate is inherently reasonable, and that the rate from competing points is not shown to be unreasonably low, does not establish that the discrimination is just. Both rates may lie within the zone of reasonableness and yet result in undue prejudice. *American Express Co.* v. *Caldwell,* 244 U. S. 617, 624.

Every factor urged by the carriers as justifying the higher rate from Knoxo appears to have been considered by the Commission. How much weight shall be given to each must necessarily be left to it. The Commission found, among other things, that the cost of the service from Knoxo was not greater than the cost of the transportation from many other points which enjoy the lower rate; that the value of the service was the same; and that other traffic conditions incident to shipment from Knoxo were so similar to those of shipments from other points enjoying a lower rate that the prejudice to which

the Swift Lumber Company had been subjected was undue and unreasonable. The innocent character of the discrimination practiced by the Illinois Central was not established, as a matter of law, by showing that the preferential rate was given to others for the purpose of developing traffic on the carrier's own lines or of securing competitive traffic. These were factors to be considered by the Commission; but they did not preclude a finding that the discrimination practiced is unjust. Such was the law even before Transportation Act 1920. *Texas & Pacific Ry. Co.* v. *Interstate Commerce Commission,* 162 U. S. 197, 218, 220; *Interstate Commerce Commission* v. *Alabama Midland Ry.,* 168 U. S. 144, 167, 175. In view of the policy and provisions of that statute, the Commission may properly have concluded that the carrier's desire to originate traffic on its own lines, or to take traffic from a competitor, should not be given as much weight in determining the justness of a discrimination against a locality as theretofore. For now, the interests of the individual carrier must yield in many respects to the public need, *Railroad Commission of Wisconsin* v. *Chicago, Burlington & Quincy R. R. Co.,* 257 U. S. 563; *New England Divisions Case,* 261 U. S. 184; and the newly conferred power to grant relief against rates unreasonably low may afford protection against injurious rate-policies of a competitor, which were theretofore uncontrollable. The order of the Commission was not an attempt to establish its own policy of rate-making.[6] See *Southern Pacific Co.* v. *Interstate Commerce Commission,* 219 U. S. 433; *Interstate Commerce Commission* v. *Union Pacific R. R. Co.,* 222 U. S. 541, 554. It merely expressed the judgment of the Commission that existing rates subjected shippers from Knoxo

---

[6] Compare *Idaho* v. *Director General,* 66 I. C. C. 330, with *Idaho* v. *Oregon Short Line,* 83 I. C. C. 4.

to undue prejudice. The judgment so exercised, being supported by ample evidence, is conclusive.[7]

*Third.* The Fernwood & Gulf contends that the order is obnoxious to the due process clause. The argument is that even its present division of 4 cents per 100 pounds is unremunerative; and that a smaller return would be confiscatory. To this argument there are several answers. The order does not require a reduction of the through rate. It may be complied with by raising the rate from Fernwood and other points now being preferred. Moreover, a reduction of the through rate would not necessarily result in decreasing the amount of the short line's division. The Commission may, upon application, accord to the Fernwood & Gulf the appropriate division.[8] *New England Divisions Case,* 261 U. S. 184. There is no suggestion that the resulting reduction of the Illinois Central's division would result in rendering the rate confiscatory as to it.

---

[7]*Interstate Commerce Commission v. Illinois Central R. R. Co.,* 215 U. S. 452, 470; *Interstate Commerce Commission v. Delaware, Lackawanna & Western R. R. Co.,* 220 U. S. 235, 251; *United States v. Louisville & Nashville R. R. Co.,* 235 U. S. 314, 320; *Manufacturers Ry. Co. v. United States,* 246 U. S. 457, 481; *Seaboard Air Line Ry. Co. v. United States,* 254 U. S. 57, 62.

In *East Tennessee, Virginia & Georgia Ry. Co. v. Interstate Commerce Commission,* 181 U. S. 1, 11, 12, 23–26, and *Interstate Commerce Commission v. Louisville & Nashville R. R. Co.,* 190 U. S. 273, the orders of the Commission were only *prima facie* evidence of facts found by them, since they were entered before the Acts of June 29, 1906, c. 3591, 34 Stat. 584, 589, 591, and the Act of June 18, 1910, c. 309, 36 Stat. 539, 551–554. See *Procter & Gamble Co. v. United States,* 225 U. S. 282, 297–8; *Kentucky & Indiana Bridge Co. v. Louisville & Nashville R. R. Co.,* 37 Fed. 567, 613. Moreover, those cases involved primarily a question arising under the Fourth Section.

[8] This was done, after removing the unjust discrimination, in *McGowan-Foshee Lumber Co. v. Florida, Alabama & Gulf R. R. Co.,* 43 I. C. C. 581; 51 I. C. C. 317.

*Fourth.* The Fernwood & Gulf contends also that the Swift Lumber Company is estopped from questioning the rates applicable to it. The argument is that when it acquired the mill property from a predecessor of the short line, an agreement provided that all lumber produced should be shipped over the line; and that the 2-cent arbitrary was then known to be in effect, and was thereby assented to for all time. The contract, which is silent as to rates, is not susceptible of the construction urged. We have, therefore, no occasion to consider whether such an agreement would be valid and what its effect would be. Compare *Southern Pacific Co.* v. *Interstate Commerce Commission,* 219 U. S. 433; *United States* v. *Union Stock Yard Co.,* 226 U. S. 286; *O'Keefe* v. *United States,* 240 U. S. 294.

In No. 38, where the short line alone seeks to set aside the Commission's order, this additional fact requires mention. The rate to the short line points is not a joint rate, but a combination of the trunk line rate to the junction and the short line local rate. The distinction is without legal significance in this connection. A through route was established; and the transportation is performed as the result of this arrangement between the carriers, expressed or implied.[9] Undue prejudice may be inflicted as effectively by a through rate which is a combination of locals, as by a joint through rate. The power of the Commission to remove the unjust discrimination exists in both classes of cases.

> *In No. 40, decree reversed.*
> *In No. 38, decree affirmed.*

---

[9] See *St. Louis Southwestern Ry. Co.* v. *United States,* 245 U. S. 136, 139, note 2.