The **PENNSYLVANIA RAILROAD COMPANY et al.**

v.

**UNITED STATES of America**
and
**Interstate Commerce Commission.**

No. 31290.

United States District Court
E. D. Pennsylvania.

April 5, 1963.

Edward A. Kaier, General Solicitor, Philadelphia, Pa., for plaintiffs.

John H. D. Wigger, Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., for defendant, the United States.

Robert W. Ginnane, Gen. Counsel, Francis A. Silver, Assoc. Gen. Counsel,

Washington, D. C., for defendant Interstate Commerce Commission.

Before GANEY, Circuit Judge, and LORD and BODY, District Judges.

JOSEPH S. LORD, III, District Judge.

This is an action by The Pennsylvania Railroad Company and twenty-five other railroads against the United States and the Interstate Commerce Commission to set aside an order of the Commission, dated November 22, 1961, which requires the cancellation of tariff schedules effecting an increase of $7.50 per car in the charges for intraterminal and interterminal switching in the "Eastern District". An intraterminal charge is applied to a movement over one railroad between two points in the same city or switching district, and an interterminal charge applies for a similar switching movement over two or more railroads. The Eastern District may be described as embracing generally that part of the United States east of the Mississippi and north of the Ohio and Potomac Rivers. Venue and jurisdiction of this Court are founded upon Sections 1336, 1398 and 2321 to 2325 of Title 28.

The tariff in question increasing switching rates was filed under authority of a Special Permission Order of the Commission which provided that the tariffs would be immediately effective and which also contained a provision for refund of the increases to the patrons of the railroads in the event that the charges were ultimately held to be unlawful. The Commission instituted an investigation into the lawfulness of the switching tariff: Ex parte No. 223, Sub. No. 2, Increased Switching Charges. In its report dated November 22, 1961, 315 I.C.C. 199, the Commission found that the proposed increases were not shown to be just and reasonable and ordered that the schedules be cancelled. The Commission indicated the amount of an increase which it concluded would be just and reasonable and its order requiring cancellation of the schedules was stated to be without prejudice to the establishment of such just and reasonable charges.

The conclusion of the Commission that the proposed increases were not just and reasonable was based on (1) the finding that the increases applied only on switching movements not connected with line-haul movements and that no such distinction should be made, and (2) the finding that the application of a flat increase on varying levels of terminal switching charges was unreasonable because it resulted in substantially greater percentage increases at certain terminals than at others. The Commission concluded that in place of a flat amount increase, a just and reasonable increase would be in the amount of 20% over present charges, not to exceed $7.50 in the Eastern District.

We need not dwell at any length on the question of the non-applicability of the increase to line-haul movements, for the railroads have now indicated an intention to cover such movements by whatever increase is ultimately allowed.

The major issue then is whether the second part of the Commission's finding is supported by substantial evidence in the record. The railroads contend that it is not, and further that the action of the Commission is confiscatory in that the Commission, while admitting in its report that even the proposed increases will not cover out-of-pocket expenses, has nevertheless reduced the amount of the increases.

█ The Commission initially argues that its action is not here reviewable, the action being merely " * * * the approval, but not prescription, by the Commission of an increase in switching rates or charges less than that proposed by respondents * * *." " * * * In other words, the respondents were permitted but not required * * * to establish the charges which the Commission had concluded would be just and reasonable. * * *" (Brief for I.C.C. pp. 6, 8). As carrier made rates, they would not be subject to review.

This obviously disregards that part of the Commission's report and order finding that the carrier made rates were not

just and reasonable, and requiring that they be cancelled. As such, it is a determination that the railroads could not impose certain charges and is hardly a " * * * mere 'abstract declaration' on some issue by the Commission * * *" but is rather " * * * an order that determines a 'right or obligation' so that 'legal consequences' will flow from it * * *." Pennsylvania Railroad Company v. United States, 363 U.S. 202, 205, 80 S.Ct. 1131, 1133, 4 L.Ed.2d 1165 (1960).

Proceeding then to the merits, the issue is whether the record supports the Commission's action cancelling the tariff. We start with the proposition that a rate which is below the cost of the service is "intrinsically just and reasonable". Interstate Commerce Commission v. Chicago, B. & Q. R. Co., 186 U.S. 320, 339, 22 S.Ct. 824, 46 L.Ed. 1182 (1901). The Commission here has found that " * * switching charges in the eastern and western districts, increased as proposed generally would be below the out-of-pocket costs of performing the services * * *." Hence, on its face, the increase here sought is just and reasonable. In order to remove the increased rate from the protection of this eminently logical principle, the Commission points to the fact that a flat increase will result in substantially greater percentage increases for some localities than for others. This might have some validity if the rate were being examined for each terminal separately, and if it were shown that the flat increase would raise the rate at a given terminal beyond a fair return over cost. However, the rate was a general rate increase as to which the Commission itself found the use of "average figures" appropriate. Taken, then, on the Commission's own basis, since the average charge is still below cost, the rate cannot be characterized as "unjust and unreasonable."

The mere fact that a percentage disparity may, or even will, result is not enough to brand the increase as unacceptable so long as that increase remains under cost. An example may be helpful: The rate at location A for switching is $5.00 per car. At location B it is $10.00 per car. The cost of switching at each is $20.00 per car. A flat increase of $7.50 per car would raise location A's rate to $12.50, an increase of 150%, but still substantially under the cost. Location B's rate would be raised to $17.50, an increase of 75%, but again under cost. Neither rate could be characterized as unjust or unreasonable, qua the rate itself, since both are below cost. Whether undue prejudice results to location A from the percentage variance is a completely different question which is not before us and was not before the Commission.

Since the rate was treated as a general increase, there is nothing in the record to show unreasonableness as to any given locality. We cannot escape the conclusion that the Commission ultimately treated this case as a Section 3 [1] matter. The brief filed on behalf of the Commission states:

" * * * The principal objection raised by the protestants in X–223, Sub. 2, was that a flat increase of the magnitude proposed would result in disproportionate percentage increases throughout the country, thereby disrupting the existing pattern based on local conditions and circumstances. (315 I.C.C. at 202 and 210). Finding (2), supra, was made in response to the issues raised by protestants and the evidence contained in the record. * * *"

This may be true, but, if so, it is a matter for the procedures and standards of Section 3.

[1] "It shall be unlawful for any common carrier * * * to * * * cause any undue or unreasonable preference or advantage to any particular person * * * [or] locality * * * or to subject any particular person * * * [or] locality * * * to any undue or unreasonable prejudice or disadvantage * * *." (49 U.S.C. § 3(1).·

There are unquestionably differences between reasonableness on the one hand and rate relations on the other. In New York v. United States, 331 U.S. 284, at page 344, 67 S.Ct. 1207, at page 1239, 91 L.Ed. 1492 (1947), the Court said:

"* * * This case presents problems in rate relationships, that is to say, problems of a discriminatory rate structure condemned by § 3(1). The Commission may remove a discrimination effected by rates, even when they are within the zone of reasonableness, if the discrimination is forbidden by § 3(1). As Mr. Justice Brandeis stated in United States v. Illinois Central R. Co., supra, [263 U.S. 515] p. 524, [44 S.Ct. 189, p. 193, 68 L.Ed. 417] the mere fact that one rate is 'inherently reasonable, and that the rate from competing points is not shown to be unreasonably low, does not establish that the discrimination is just. Both rates may lie within the zone of reasonableness and yet result in undue prejudice.' * * *"

In Foye v. Atchinson, T. & S. F. R. Co., 255 I.C.C. 466 (1943), the Commission said, at page 467:

"* * * We have before us only the issues whether or not the rate charged was unreasonable, that is, whether it exceeded the maximum limit of reasonableness. Questions as to the relation of rates, independent of their measure or level, are decided under Section 2 or 3 of the Interstate Commerce Act, dealing with unjust discrimination and undue prejudice. * * *"

█ Here, on the evidence of record and the Commission's own finding, the rates remain "within the zone of reasonableness". The Commission made no finding of undue or unreasonable prejudice or disadvantage. Indeed, it could not have made any such finding, for no such theory was pursued and no such evidence presented. Plainly and simply, the Commission set aside the plaintiffs' flat increase because it would result in varying percentage increases. Without any further indication of why this makes the *rates* unreasonable, it is not enough.

Counsel for the Commission argues that percentage variations in increases are unreasonable because they do not reflect the amount of increased cost at different locations. He urges that variations in existing charges generally reflect differences in cost of service and that a flat increase on high and low cost terminals would penalize low cost terminals, presumably because the amount by which costs increase are less at such terminals than at high cost terminals. However, the Commission said nothing of the sort in its report, nor was this the basis of its finding. The only basis was percentage increase disparity which, as we have said, does not alone support a finding of unreasonableness. The order of the Interstate Commerce Commission requiring the cancellation of the increase of $7.50 per car for switching will be set aside.